USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/10/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSSELL AWAD, <br><br> Plaintiff, <br><br> -against- <br><br> EXTENDED NURSING PERSONNEL and GIRLING HEALTH CARE OF NEW YORK, INC., <br><br> Defendants. | 1:24-cv-02117-MKV <br><br> **OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, Russell Awad, brings this case alleging that Defendants Extended Nursing Personnel ("Extended Nursing") and Girling Health Care of New York, Inc. ("Girling") discriminated against him in violation of 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") because he refused to take the COVID-19 vaccination based on his religious beliefs. Defendants move to compel arbitration, and in the alternative, move to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion to compel arbitration is GRANTED.

**FACTUAL BACKGROUND**[1]

Defendant Extended Nursing is a certified home health care agency serving clients with disabilities by providing part-time, intermittent health care and support services in the home. Compl. ¶ 11. Plaintiff Awad was hired as a case manager by Extended Nursing on or around May

---

[1] The Court draws these facts from the Complaint, *see* [ECF No. 1 ("Compl.")], the motion to compel briefing and the exhibits attached thereto, *see* [ECF Nos. 17, 18 ("Def. Mem."), 19 ("Achilarre Aff."), 19-1 (the "Arbitration Agreement," "Arb. Agreement," or "Agreement"), 24 ("Pl. Opp."), 25, 26 ("Def. Reply")]. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229–30 (2d Cir. 2016) ("In deciding motions to compel, courts apply a "standard similar to that applicable for a motion for summary judgment . . . "The summary judgment standard requires a court to 'consider all relevant, admissible evidence submitted by the parties'[.]").

13, 2019. Compl. ¶¶ 24, 26; Def. Mem. at 2. In Awad's position as a case manager, Plaintiff worked in an office, managing the care of clients by conducting check-ins and assessments by phone, setting up medical appointments, and communicating with clients' doctors, and home health providers. Compl. ¶¶ 25, 26.

Shortly after he was hired, Awad signed an arbitration agreement with Defendant Extended Nursing. *See* Def. Mem. at 2; ECF No. 19–1 ("Arb. Agreement"). The agreement expressly provides that it is "entered into between the undersigned employee [Awad] and Extended Nursing Personnel, LLC including any parent[,] subsidiary, agent, affiliate, successor or assign" which are defined collectively as the "Company". Arb. Agreement ¶ 1. The Agreement states "Employee and the Company agree that any controversy, dispute, or claim that could otherwise be raised in court ("Claim") that . . . Employee has against the Company, its current or former officers, directors, members, employees, vendors, clients, customers, agents, parents, subsidiaries, affiliated companies, successors, or assigns, shall be settled exclusively by binding arbitration rather than in court." *Id.* ¶ 2. It specifies that claims covered by the Arbitration Agreement "include, but are not limited to. . . claims for violation of any federal, state, or other government law, . . . for example, claims under . . . claims under . . . Title VII of the Civil Rights Act of 1964, . . . the New York State Human Rights Law, [and] the New York City Human Rights Law[.]" *See id.*

In the spring of 2020, at the outset of the COVID-19 pandemic, Awad began performing his job from home. Compl. ¶ 28. More than a year later, Extended Nursing informed its staff of its new COVID-19 Vaccination Policy that required mandatory vaccination for anyone working onsite. *See* Compl. ¶ 31; Def. Mem. at 4. Extended Nursing advised that those requesting an exemption based on a disability or a "sincerely held religious belief under Title VII" to make the request in writing. Compl. ¶ 32. Extended Nursing stated that "[a]ccommodations for exemptions

2

due to religious belief have been temporarily extended through Tuesday, October 12, 2021, at which time it will be determined by the NYS courts if individual will be allowed to seek exemption for this reason." Compl. ¶ 34.

Awad is a devout Catholic, he attends church approximately four times per year, and was baptized and confirmed. Compl. ¶¶ 18–19. As part of his religious faith, Awad is staunchly anti-abortion. Compl. ¶ 22. Accordingly, on October 12, 2021, he filed a request with Extended Nursing for a religious exemption from the vaccine requirement stating, "As a devout Christian I hold my beliefs close to my heart. The three vaccines that are out now all used Fetal Cell Lines in their development, production and testing. I believe in the sanctity of the unborn and that receiving the COVID-19 vaccine would be a violation of my conscience, which prohibits me from even a remote complicity with the sin of abortion." Compl. ¶ 35.

A week later, Extended Nursing replied stating: "you are currently working remotely and do not come into contact with other employees or patients. We will consider and evaluate this request at a time closer to when you will be required to report to the office." Compl. ¶¶ 37–38.[2] Within a month, Extended Nursing notified Awad that "[t]he law does not allow for healthcare employers to allow their employees to go unvaccinated because they work remotely. If you are employed by a CHHA, MLTC or other health entity you must be vaccinated whether you work remotely or in the office." Compl. ¶ 40. Shortly thereafter, Awad was terminated. Compl. ¶ 41. Awad alleges that he was terminated because of his religiously based anti-abortion views and

---

[2] Plaintiff Awad interprets this communication as a denial of his request for a religious exemption. Compl. ¶¶ 37–38. Defendants assert that this communication merely stayed Awad's request because he was working remotely at the time. Def. Mem. at 5. Whether this letter constituted a denial is irrelevant to the analysis of the motion to dismis.

3

because of his request for a religiously based exemption from the COVID-19 vaccine mandate. Compl. ¶ 42.

In the Complaint, Plaintiff makes very few factual allegations explaining Defendant Girling's role in this case. Plaintiff's only factual allegations include that (1) Defendant Girling is a certified home health care agency that provides nursing, post-operation, pediatric, and therapy services; (2) "Defendants [Extended Nursing] and Girling determined policies, procedures, and conditions of employment which directly affected Plaintiff's working conditions that led to his termination"; and (3) generally, "Defendants unlawfully terminated Plaintiff[.]" Compl. ¶¶ 14, 16, 47. The Parties' briefing of the motion to compel demonstrates that the parties dispute the nature of the relationship between Extended Nursing and Girling. Generally, Defendants allege that, subsequent to Plaintiff's termination, Girling acquired Extended Nursing and that Girling was never Awad's employer. Def. Mem. at 4, 6, 10–11. Plaintiff, in his Opposition, asserts that due to ongoing litigation, the sale of Extended Nursing to Girling has not been "effectuated," but, Plaintiff also alleges that "Girling was [Awad's] employer." Pl. Opp. at 1, 3, 9 n.2.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint. [ECF No. 1 ("Compl.")].[3] Plaintiff filed a letter in opposition and the Court granted Defendants' request and set a briefing schedule. [ECF Nos. 14, 15].[4] With leave of the Court, Defendants moved to compel arbitration, and in the

---

[3] Prior to filing a Complaint, Awad filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of a Right to Sue. Compl. ¶ 8. Defendant does not argue that Awad failed to fulfill procedural prerequisites prior to commencing this action.

[4] Plaintiff argues in his opposition, that the Court granted Plaintiff leave only to file a motion to dismiss and not a motion to compel arbitration and thus Defendants have contravened the Court's order. [ECF No. 24 at 2]. In its scheduling order, the Court did only reference a motion to dismiss, and did not mention Plaintiff's anticipated motion to compel arbitration. [ECF No. 15]. However, in the context of the parties' pre-motion letters which both address Defendants two proposed alternative motions, [ECF Nos. 13–14], the scheduling order issued by the Court should be read to grant Defendants leave to argue both that the case should be referred to arbitration, and in the alternative, be

alternative, moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filing a memorandum of law, [ECF Nos. 17, 18 ("Def. Mem.")], and a declaration in support which attached an Arbitration Agreement as an exhibit. [ECF No. 19 ("Achilarre Aff."), 19-1 (the "Arbitration Agreement," the "Arb. Agreement," or "Agreement")]. Plaintiff filed a memorandum of law in opposition and a declaration in support, [ECF Nos. 24 ("Pl. Opp."), 25], and Defendants filed a reply, [ECF No. 26 ("Def. Reply")].

## **LEGAL STANDARD**

Pursuant to Section 2 of the Federal Arbitration Act, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228–29 (2d Cir. 2016) (quoting 9 U.S.C. § 2) (alterations in original). The Act reflects "a national policy favoring arbitration" based on the "desire to preserve . . . parties' ability to agree to arbitrate, rather than litigate." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Accordingly, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)). However, "parties are not required to arbitrate unless they have agreed to do so." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

When deciding motions to compel arbitration, courts "apply a standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (internal quotation

---

dismissed. Moreover, Defendants' pre-motion letter put Plaintiff on notice that they intended to file a motion to compel arbitration and a motion to dismiss in the alternative. [ECF No. 13].

marks omitted). On a motion to compel arbitration, courts therefore consider "all relevant, admissible evidence submitted by the parties and . . . draw all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer*, 868 F.3d at 74.

## DISCUSSION

### I. MOTION TO COMPEL ARBITRATION

In deciding motions to compel arbitration, a court must consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Ameriprise Fin. Servs., Inc. v. Beland*, 672 F.3d 113, 128 (2d Cir. 2011). Because arbitration is "a creature of contract," the "threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." *Doctor's Assocs., Inc.*, 934 F.3d at 250. In determining whether the parties formed a contract, a district court considers "their expressed words and deeds." *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 106 (2018) (quoting *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (1977)). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). Here, Defendants have carried their burden.

### A. Awad and Extended Nursing Entered into a Valid Agreement to Arbitrate

The Arbitration Agreement states, "Employee and the Company agree that any controversy, dispute, or claim that could otherwise be raised in court ("Claim") that . . . Employee has against the Company. . . shall be settled exclusively by binding arbitration rather than in court." *See id.* ¶

6

2. The Arbitration Agreement is signed by both Extended Nursing and Awad. *See id.* at 5. When deciding "whether the parties agreed to arbitrate—we look to 'state contract law principles.'" *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (quoting *Nicosia*, 834 F.3d at 229). "To form a binding contract [under New York law,] there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *See Reliable Automatic Sprinkler Co. Inc. v. Sunbelt Grp. L.P.*, 472 F. Supp. 3d 64, 72 (S.D.N.Y. 2020) (quoting *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016)).

The signatures of Extended Nursing and Awad manifest the required mutual assent to create a binding Arbitration Agreement under New York law. *See Kelly v. Key Corp*, No. 23-CV-6569-DGL-MJP, 2024 WL 1142090, at *6 (W.D.N.Y. Mar. 15, 2024) ("[I]f a party signs or otherwise assents to an agreement with an arbitration provision, they will be bound by it even if they did not read it."); *Lewis v. ANSYS, Inc.*, No. 19-cv-10427, 2021 WL 1199072, at *5 (S.D.N.Y. March 30, 2021) (same); *see also I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("she who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them") (cleaned up).

Plaintiff fails to challenge the validity of the contract. Instead, Plaintiff asserts that the Arbitration Agreement should not be enforced because the ownership of Extended Nursing is disputed and subject to litigation. Pl. Opp. at 1, 15–16. Plaintiff contends that the Arbitration Agreement should not be enforced because, due to the ongoing dispute, "it is unclear whether [Awad] agreed to arbitrate with a specific party." *Id.* at 16. On the contrary, the Arbitration Agreement is very clear that "[t]he Arbitration Agreement is entered into between the undersigned

employee [Awad] and Extended Nursing Personnel, LLC including any parent[,] subsidiary, agent, affiliate, successor or assign (collectively, the "Company")." Arb. Agreement ¶ 1.

The cases cited by Plaintiff in his attempt to avoid arbitration do not support his argument. *See* Pl. Opp. 16 (citing *Schon v. Rakower*, No. 502720/12, 2013 WL 6334833 (N.Y. Sup. Ct. Dec. 04, 2013) and citing *Weisenfeld v. Iskander*, No. 651436/2016, 2019 WL 1877209 (N.Y. Sup. Ct. Apr. 26, 2019)). In fact, the very quotations from these cases that Plaintiff includes in his Opposition demonstrate how they are factually different from this case. In *Schon*, a purported arbitration agreement "lack[ed] essential terms," it "seem[ed] to leave the parties to the arbitration in question, as it defines them merely by the phrase 'the litigants who signed below with the signature of our hands,'" and "b[ore] only petitioner's signature and le[ft] the identity of other potential parties to the arbitration undefined." Pl. Opp. at 16 (quoting *Schon*, 2013 WL 6334833, at *5). In *Weisenfeld*, handwritten notes did not constitute a real estate purchase agreement where "there [was] nothing . . . to show the parties agreed to the material terms, including the identity of the party or parties to be bound" and the notes were "too vague to ascertain what was promised in order for the court to enforce it" and therefore "the alleged contract fail[ed] for a lack of definiteness." *See* Pl. Opp. at 16 (quoting *Weisenfeld*, 2019 WL 1877209, at *5); *see also Weisenfeld*, 2019 WL 1877209, at *2 (indicating that the purported contract was composed of handwritten notes regarding a real estate deal).

As explained above, both parties to the contract at issue here, Awad and Extended Nursing, identified themselves clearly and signed the Arbitration Agreement. Arb. Agreement ¶ 1, at 5. Moreover, the Agreement explains clearly the purpose and material terms of the agreement, namely that "Employee and the Company agree that any controversy, dispute, or claim that could otherwise be raised in court ("Claim") [between the parties] shall be settled exclusively by binding

arbitration rather than in court." *See id.* ¶ 2. Accordingly, the Court finds that Awad and Extended Nursing have entered into a valid agreement to arbitrate.

**B.    Questions Regarding the Scope of the Arbitration Agreement are Delegated to the Arbitrator**

If the movant overcomes the burden of establishing a valid agreement to arbitrate, "[b]efore addressing the second inquiry [regarding whether the subject claims are covered by the scope of the agreement, the Court] must also determine who—the court or the arbitrator—properly decides the issue." *In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). While the question of "whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination," an exception to that general rule applies if the arbitration agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (internal quotation marks omitted).

"[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318–19 (2d Cir. 2021).  Here, the Arbitration Agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator.  First, the Arbitration Agreement incorporates the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). *See* Arb. Agreement ¶ 8.  These rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules & Mediation Procedures, Rule 6(a) (Jan. 1, 2023). The Second Circuit has repeatedly found

9

that this exact language "explicitly empower[s] an arbitrator to resolve questions of arbitrability." *See, e.g.*, *DDK Hotels*, 6 F.4th at 318; *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Second, the Arbitration Agreement is quite broad. It states that "[o]ther than as provided in this Agreement, Employee and the Company agree that any controversy, dispute, or claim that could otherwise be raised in court ("Claim") that . . . Company has against Employee or the Employee has against the Company. . . shall be settled exclusively by binding arbitration rather than in court." *See* Arb. Agreement ¶ 2. Accordingly, the Arbitration Agreement delegates to an arbitrator questions regarding whether this case falls under the scope of the agreement.

Moreover, though the Court is required to delegate to the arbitrator questions regarding whether the present claims are covered by the operative Arbitration Agreement, there does not appear to be much question here. The Arbitration Agreement states that "Covered Claims include, but are not limited to . . . claims for violation of any federal, state, or other government law, . . . for example, claims under . . . Title VII of the Civil Rights Act of 1964, . . . the New York State Human Rights Law, the New York City Human Rights Law[.]" *See* Arb. Agreement ¶ 2; *see also* Def. Mem. 9–10. These are the very laws under which Plaintiff brings his several claims in this action. Moreover, Plaintiff mounts no argument that the scope of the Arbitration Agreement would not cover the present claims. *See* Pl. Opp. at 14–17. Accordingly, Extended Nursing, a signatory to the Arbitration Agreement, may certainly compel Awad to arbitrate the present claims.

**C.    Girling May Compel Awad to Arbitrate the Claims Asserted Here**

Though Girling did not sign the operative Arbitration Agreement, it may compel signatory, Awad, to arbitrate the case against it. Generally, federal law "does not require parties to arbitrate when they have not agreed to do so[.]" *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). However, a signatory to an arbitration agreement may be required to

arbitrate a dispute with a non-signatory either when (1) the arbitration clause "explicitly vests rights to arbitrate," in non-signatories or (2)(a) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (b) there is a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Choctaw Generation Ltd. P'ship v. American Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir.2008); *Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 287 (S.D.N.Y. 2019).

The parties dispute the nature of the relationship between Extended Nursing and Girling. Defendants assert that, after Plaintiff was terminated, Girling acquired Extended Nursing and is thus an affiliate or "related business entity" of Extended Nursing. Def. Mem. at 10–11. Further, Defendants assert that "Girling was never Plaintiff's employer." Def. Reply. at 4. Awad asserts that "Girling was his employer and must be held liable for failing to accommodate him and for unlawfully terminating him" Pl. Opp. at 9. Awad also alleges that "Defendants [Extended Nursing] and Girling determined policies, procedures, and conditions of employment which directly affected Plaintiff's working conditions that led to his termination" and "discriminat[ed] against Plaintiff because of his religiously based anti-abortion beliefs and practices and terminat[ed] his employment." Compl. ¶¶ 16, 56. Awad also asserts that during his employment by Extended Nursing, Girling contracted to purchase Extended Nursing by March 29, 2021. Pl. Opp. at 1. Awad alleges that the sale never closed and there has been extensive litigation regarding the sale between Extended Nursing and Extended CHHA Acquisition—a company formed by Girling for

11

the purpose of the acquisition of Extended Nursing. Pl. Opp. at 1.[5] Conversely, Defendants state that Girling was never Awad's employer and the sale of Extended Nursing to Girling did in fact close by Court Order on January 4, 2022, although the parties to the sale are disputing "post-closing adjustments to this purchase price." Def. Reply. 2 n.2, 6.[6]

Awad's assertion that Girling never purchased his former employer, Extended Nursing, contradicts his assertions that that Girling was his employer at the time of his termination and was capable of controlling policies and procedures which led to his termination. "[W]here 'the facts alleged' in a nonmovant's declaration 'are so contradictory that doubt is cast upon their plausibility,' then absent other evidence, granting the motion to compel [arbitration] may be appropriate." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (per curiam) (finding that a Court may reject statements from a party attempting to defeat a motion for summary judgment when they are so contradictory that "doubt is cast upon their plausibility"); *see also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528–29 (2d Cir.1985) (A Court may "disregard[]" a parties statements  that "seek[] to controvert its own pleading." (internal citations omitted)).

---

[5] Defendants argue that the Court should not consider Plaintiff's additional factual assertions in its Opposition to the Motion to Compel. Def. Reply at 2–3. However, in deciding motions to compel, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  The summary judgment standard requires a court to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

[6] Plaintiff requests in his Opposition that the Court grant limited discovery "to determine the effect of Girlings' acquisition of Extended [Nursing] on Defendants' liability." *See* Pl. Opp. at 16.  This request is denied as procedurally improper. According to the Individual Rules of this Court "[p]arties wishing to file any motions concerning discovery should, prior to filing any motion, request a pre-motion conference with the Court." *See* Individual Rules of Practice in Civil Cases §4(A)(i). Moreover, the case Plaintiff cites as support for its request is inapposite. *See* Pl. Opp. 16–17 (citing *WTA Tour, Inc. v Super Slam Ltd.*, 339 F Supp 3d 390, 406-407 (S.D.N.Y. 2018)).  In any event, the Court need not reach the question of Girling's liability when the dispositive issue for this Court on the pending motion is whether to compel arbitration.

Moreover, the dispute between the parties regarding whether the sale to Girling closed is not material to the issue of whether Girling may compel arbitration. Under either set of facts alleged by the parties, Girling may compel Awad to arbitrate these claims because the Arbitration Agreement explicitly vests that right in Girling and because Girling's relationship with Extended Nursing is sufficiently close and the issues Girling is seeking to resolve in arbitration are intertwined with the Arbitration Agreement.

First, the Arbitration Agreement is written very broadly to cover disputes between Awad and several parties associated with Extended Nursing. The Agreement is "entered into between the undersigned employee ('Employee') and Extended Nursing Personnel, LLC, *including* any parent[,] subsidiary, agent, affiliate, *successor* or assign (collectively, the 'Company')." Arb. Agreement ¶ 1 (emphasis added). Further, those parties agreed that any dispute "the Employee has against the Company, its current or former officers, directors, members, employees, vendors, clients, customers, agents, parents, subsidiaries, *affiliated companies*, *successors*, or *assigns*, shall be settled exclusively by binding arbitration rather than in court." Arb. Agreement ¶ 2 (emphasis added). If Girling is affiliated with, a "related business entity" or successor of Extended Nursing, as Defendants assert, then it is "explicitly vested with the right" to have an arbitrator preside over Awad's employment dispute because the Arbitration Agreement explicitly gives affiliates, successors, and assigns of Extended Nursing that right. *See Citadel*, 431 F. Supp. 3d at 288, 290 (finding a contract explicitly provided for arbitration by non-signatory "successors, assigns, and personal representatives"); *see also McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 772 (2d Cir. 1992) ("[U]nder general contract principles, we may deem non-signatories to fall within the scope of an arbitration agreement where that is the intent of the parties.").

13

Moreover, if, as Plaintiff alleges, Girling was a co-employer of Awad such that it acted in tandem with Extended Nursing to "determine[] policies, procedures, and conditions of employment which directly affected Plaintiff's working conditions that led to his termination" and "discriminat[e] against Plaintiff because of his religiously based anti-abortion beliefs and practices and terminat[e] his employment," Compl. ¶¶ 16, 56, Girling must have had a corporate or agency relationship with Extended Nursing through which the Arbitration Agreement would grant Girling a right to "settle[] [this matter] exclusively by binding arbitration rather than in court." *See* Arb. Agreement ¶ 2.

Furthermore, Girling may compel Awad to bring the present suit against it in arbitration because (a) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (b) there is a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010) (quoting *Choctaw Generation Ltd.,* 271 F.3d at 406 and quoting *Sokol Holdings*, 542 F.3d at 359).

The case *Ragone v. Atlantic Video at Manhattan Center* is instructive. *See* 595 F.3d at 126–28. In *Ragone*, the Second Circuit found that the subject matter of an employment dispute between an employee and one of her employers was sufficiently intertwined with her dispute with her other non-signatory employer because it was "in fact, the same dispute: whether or not [Plaintiff] was subjected to acts of sexual harassment which were condoned by supervisory personnel at [both employers]." *Ragone*, 595 F.3d at 128. The *Ragone* Court found that the relationship between those two employers was sufficiently close that the Plaintiff should be estopped from denying an

obligation to arbitrate with her non-signatory employer because "she understood [that defendant] to be, to a considerable extent, her co-employer" and that "she would work with and be supervised by [that defendant]." *Id.* at 127. Similarly here, if Plaintiff's allegations—that non-signatory Girling was his employer, even though there remains a dispute regarding a sale between Girling and Extended Nursing—are accepted as true, Girling may compel Plaintiff to arbitration.

"In [the] intertwinement analysis, courts commonly conclude that when an employee's claims against both a signatory employer and a non-signatory co-employer or supervisor arise out of the same alleged misconduct, the non-signatory co-employer or supervisor may invoke arbitration." *Lee v. Engel Burman Grande Care at Jericho, LLC*, No. 20CV3093 (RPK) (RER), 2021 WL 3725986, at *5 (E.D.N.Y. Aug. 23, 2021) (citing *Ragone*, 595 F.3d at 127 and citing *Fenton v. Criterion Worldwide*, No. 18-CV-10224, 2020 WL 1489795, at *6 (S.D.N.Y. Mar. 27, 2020)) ("The relationship between the signatory and non-signatory defendants is close: plaintiff alleges that Engel and Ultimate were her co-employers . . . and that Mularchuk was an employee of Engel and Ultimate who had the authority to supervise, hire, fire, demote, and promote plaintiff, . . . Moreover, plaintiff's claims against all defendants stem from the same alleged conduct[.]")); *see also Fenton v. Criterion Worldwide*, No. 18-CV-10224, 2020 WL 1489795, at *6 (S.D.N.Y. Mar. 27, 2020) ("Fenton is estopped from refusing to arbitrate her employment claims against Morton, her co-employer."); *Barreto v. Jec II, LLC*, No. 16-CV-9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017) ("It is clear that plaintiffs considered defendants to be co-employers."); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 CIV. 5651 AJN, 2014 WL 1172581, at *5 (S.D.N.Y. Mar. 21, 2014) (finding intertwined-ness test satisfied where plaintiff alleged identical allegations against "co-employer" defendants and did not distinguish between defendants throughout pleadings).

15

Here, Awad mounts the same six causes of action against both defendants that he alleges were his co-employers and both liable for his allegedly discriminatory termination. Compl. ¶¶ 16, 54–71. Nearly all of the factual allegations about Girling in the Complaint are made jointly against both defendants. See, e.g., Compl. ¶¶ 16, 17, 71 ("Defendants Home Care and Girling determined policies, procedures, and conditions of employment which directly affected Plaintiff's working conditions that led to his termination" and "Defendants Home Care and Girling are collectively referred to as 'Defendants'" and "Defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL by discriminating against Plaintiff because of his religiously based beliefs and practices."). Accordingly, if Awad's factual allegations are true, Girling may compel Awad to arbitrate the claims against it.

Conversely, if Defendants' factual assertions—that Girling purchased Extended Nursing after the termination of Awad and is now a "related business entity" of Extended Nursing—that also compels the conclusion that Girling may compel Awad to arbitration. *See* Def. Mem. at 10–11. First, Defendants are sufficiently related under this test if non-signatory defendant has a "*corporate* relationship to a signatory party" including "cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross v. American Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (emphasis in original) (citing *Contec Corp.,* 398 F.3d at 209 (holding that post-merger survivor corporation could compel arbitration pursuant to agreement signed by corporation subsumed in merger) and citing *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir. 2003) (compelling arbitration where plaintiff acted toward non-signatory affiliated corporation "as if it were signatory") and citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) *abrogated on other grounds by Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023)

(compelling plaintiff to arbitration where "it treated a group of related companies as though they were interchangeable")). Further, the Arbitration Agreement's inclusion of any "parent[,] subsidiary, agent, affiliate, successor or assign" as a party to the Agreement put Awad on notice that parties other than Extended Nursing itself could compel him to arbitration. Arb. Agreement ¶ 1. The subject matter of the dispute between Awad and Extended Nursing and the dispute between Awad and Girling is intertwined for the same reasons as explained above. Accordingly, Girling may also compel Awad to arbitrate the claims against it.

## II.  MOTION TO STAY

The only remaining question is whether the action should be stayed or dismissed pending arbitration. The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), the Second Circuit explained that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Id.* at 347. Moreover, the Second Circuit counsels that "courts should stay litigation pending arbitration to avoid converting an otherwise unappealable interlocutory stay order into an appealable final dismissal order, thus enabling parties to proceed to arbitration directly." *Dylan 140 LLC v. Figueroa*, 982 F.3d 851, 859 n.2 (2d Cir. 2020) (internal quotation marks omitted) (alterations adopted). Here, Defendants request "that this action be stayed and all of Plaintiff's claims . . . compelled to arbitration." Def. Mem. at 6. Accordingly, the Court will stay the case pending the resolution of the compelled arbitration.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED and this case is STAYED pending the resolution of the arbitration. The Parties are directed to file a

letter updating the Court on the outcome of the arbitration within three business days of its completion. The Clerk of Court respectfully is requested to close the motion at ECF No. 17.

**SO ORDERED.**

**Date: March 10, 2025**        **MARY KAY VYSKOCIL**
      **New York, NY**            **United States District Judge**